IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MARK DUVALL**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-0929-L** |
| | § | |
| **DALLAS COUNTY, TEXAS,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Defendant's Motion for Summary Judgment, filed May 19, 2008; and (2) Joint Motion to Stay Deadline for Filing Pretrial Materials, filed October 9, 2008. After carefully considering the motions, briefs, record, and applicable law, the court **denies** Defendant's Motion for Summary Judgment and **denies as moot** Joint Motion to Stay Deadline for Filing Pretrial Materials.[1]

### I. Factual and Procedural Background

Plaintiff Mark Duvall ("Plaintiff" or "Duvall") filed his Original Complaint against Defendant Dallas County, Texas ("Defendant" or the "County") on May 24, 2007. Duvall asserts claims pursuant to 42 U.S.C. § 1983 for violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

Duvall was booked into the Dallas County Jail on December 11, 2003. Plaintiff's booking information sheet states that he is diabetic and hypoglycemic and is stamped "SEE NURSE." Plaintiff was involved in an altercation that resulted in injuries on December 12, 2003. According

---

[1]The court does note that while the scheduling order states that the pretrial materials are due on October 13, 2008, because this is a court holiday, the due date becomes October 14, 2008.

**Memorandum Opinion and Order - Page 1**

to the clinic notes, Duvall complained of pain in the left rib cage and left arm, bruising on his elbows, the left side of his face, his trunk, back, and lower lip, and torn skin on his neck.

Duvall returned to the clinic on December 23, 2003, complaining of a sore throat and seeking pain medication for his rib pain and migraine headaches. He was given a medicated spray for his sore throat. The nurse noted that he was not running a temperature and noted no pus pockets or inflammation. Plaintiff went to the clinic again on December 24, 2003, complaining of a sore throat and coughing, as well as pain when inhaling. Physicians ordered medication for Duvall on December 24, 2003.

Duvall was released from the jail on December 26, 2003. He received medical treatment after leaving the Jail. He collapsed in the emergency room at Lake Pointe Medical Center, spent thirty days in a "clean room" in the ICU, and needed surgery to drain fluid from his legs. Plaintiff contends that he is now permanently blind in his left eye from contracting methicillin resistant staphylococcus aureus ("MRSA") while he was incarcerated at the Dallas County Jail.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most

favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case

and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III. **Analysis**

Defendant argues that the summary judgment record fails to show that Plaintiff was denied a constitutional right and that such denial caused actual injury to him; that Plaintiff has failed to establish a conditions of confinement claim; and that he has failed to show that Defendant adopted any policy or practice with deliberate indifference or that such a policy or practice was the moving force behind any denial of any right or behind any unconstitutional condition of confinement.

Plaintiff responds that Defendant owed him a duty to provide medical care pursuant to the Fourteenth Amendment, that his claim is a conditions of confinement claim, and that the conditions he was subjected to at the Dallas County Jail serve no legitimate governmental purpose. He also argues that there is no need to make a showing pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and that he acquired MRSA during his incarceration.

Because Plaintiff brings only a conditions of confinement claim, the court will not address Defendant's arguments with respect to whether it is liable pursuant to an episodic act or omission theory and does not rely on the cases cited by Defendant analyzing episodic act or omission cases. The court rejects Defendant's attempt to recast Plaintiff's claim as an episodic acts or omissions cases and its reliance on *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc). Plaintiff does not complain of "a particular act or omission of one or more officials," and his case is not one in which "an actor is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivately to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id*. at 53.

In this case, Plaintiff disclaims any act or omission claims and casts his claim only as a condition of confinement case.

The "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). The same standard is also used to measure jail officials' liability to pretrial detainees. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). In a conditions of confinement case brought by a pretrial detainee,

> an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction. A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction. Likewise, even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices. Thus, a true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation.

*Hare*, 74 F.3d at 644-45; *see also Shepherd v. Dallas County, Texas*, 2008 WL 656889, *3 (N.D. Tex. Mar. 6, 2008) (Fitzwater, J.).

### A. Applicable Legal Standard for Conditions of Confinement Claim

Defendant argues that Plaintiff's claim is subject to the deliberate indifference standard and that he has failed to show that its employees were deliberately indifferent to him. Defendant contends that Plaintiff must show that Plaintiff was incarcerated under circumstances that subjected him to a substantial risk of serious harm, that an employee had actual knowledge that he was incarcerated under such circumstances, and that the employee made the decision not to aid Plaintiff

with the intent that he be harmed. Defendant argues that there is no evidence that there was any conscious or intentional decision to harm him. Citing *Saenz v. Heldenfels Bros., Inc.*, Defendant contends that without such evidence, reports of medical deficiencies alone are not enough to support a finding of a constitutional violation. 183 F.3d 389, 392 (5th Cir. 1999) (quoting *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).

Plaintiff responds with evidence that establishes that there was little or no infection control in the Dallas County Jail while he was incarcerated. He contends that Defendant continued to house inmates in the Jail knowing that there were dangerously high levels of MRSA in the Jail. He cites *Hare* and characterizes this case as a "classic conditions of confinement case." 74 F.3d at 744-45.

In reply, the County argues that Plaintiff must show that it acted with deliberate indifference and that his reliance on the standard originally set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), no longer applies. It contends that Plaintiff must meet the "stringent" deliberate indifference standard.

The court first considers Defendant's argument that the *Bell* standard, relied upon by the Fifth Circuit in *Hare*, is inapplicable. It cites two Supreme Court decisions that predate *Hare* and several Fifth Circuit decisions. In *Hare*, the court held that "a proper application of *Bell*'s reasonable-relationship rest is functionally equivalent to a deliberate indifference inquiry." 74 F.3d at 643. Defendant also cites *Scott v. Moore*, in which the court again used the "functionally equivalent" language when describing the relationship between the reasonable-relationship test and the deliberate indifference standard. Defendant also contends that the opinion in *Shepherd*, an unpublished district court opinion relied upon by Plaintiff, errs in its conclusion that a plaintiff need only prove that there is no "legitimate, governmental purpose" to prevail.

The court determines that Defendant's argument is flawed and that *Hare*, including its reliance on *Bell*, remains as binding authority for a conditions of confinement case brought by a pretrial detainee. In *Hare*, the Fifth Circuit held only that the *Bell* test was "ill-fitting" with respect to episodic act or omission cases. 74 F.3d at 645. Although it does include language that properly applied, the *Bell* standard in conditions of confinement cases is "functionally equivalent" to the deliberate indifference standard, this holding does not require the court to apply the deliberate indifference standard in a conditions of confinement case. *See Shepherd*, 2008 WL 656889, *3 ("Unlike an episodic act or omission claim, a condition of confinement claim involves no independent inquiry into the Jail officials' state of mind, such as whether they acted with 'deliberate indifference'.") (citation omitted); *see also Stevenson v. Anderson*, 2002 WL 432889, *3 (N.D. Tex. Mar. 18, 2002) (Lynn, J.).

Defendant's reading of the applicable case law does not contend with the language in *Hare* and *Bell* that states that in a true conditions case, the court can presume that intent exists. The court then is to apply the *Bell* test to determine whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective[.]" *Bell*, 441 U.S. at 539. *Hare*, an en banc decision, has not been vacated or otherwise modified. Defendant's argument that the deliberate indifference standard is required for a conditions of confinement case would be correct only if Plaintiff was a convicted prisoner. *See Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). Because Plaintiff is a pretrial detainee, like the plaintiff in *Hare*, and brings his claim pursuant to the Fourteenth Amendment – and not the Eighth – the court agrees with Plaintiff that the *Bell* test applies.

In this case, through deposition testimony, Plaintiff's summary judgment evidence establishes that the level of MRSA infection in the Dallas County Jail was high at the time he was incarcerated and that County officials knew about the risk of infection. Plaintiff's medical experts also point to a May 2003 memorandum that reflects that Jail personnel had knowledge of the MRSA outbreak before Plaintiff entered the Jail and these experts also opine that Plaintiff likely acquired the disease while he was incarcerated. The Health Management Associates Report on the Medical and Mental Health Programs of the Dallas County Jail and the December 8, 2005 letter from the United States Department of Justice Civil Rights Division also corroborate the conditions of the Jail, and specifically discuss the presence of MRSA and the Jail's response to the disease. The County acknowledges that there is no governmental purpose in allowing MRSA infection present in the Jail. Accordingly, the court rejects Defendant's argument that Plaintiff's claim fails because he cannot show that any Jail official acted with deliberate indifference.

In its reply brief, the County makes additional arguments about specific measures taken by Jail personnel regarding MRSA, and for the first time, it cites to specific evidence. Defendant also filed its Second Supplemental Appendix with its reply on July 20, 2008. The court declines to consider arguments raised for the first time in a reply brief. *Spring Indus., Inc. v. American Motorists Ins.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.). "It follows that a reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond." *Id*. As this case is set for trial next month, the court will not delay the trial by permitting further briefing on this issue, but will allow this evidence to be considered by a jury.

### B. Municipal Liability

Defendant also argues that the court cannot hold the County liable pursuant to section 1983 because Plaintiff fails to show that there is a policy or practice adopted or maintained by the County with deliberate indifference to the constitutional rights of pretrial detainees and that was the moving force behind Plaintiff's alleged constitutional deprivation. Plaintiff responds that this showing is only required in cases that allege a claim based upon an episodic act or omission.

#### 1. Legal Standard

In support of his contention that a *Monell* showing is only required in an episodic act or omission case, Plaintiff cites *Hare* and *Shepherd*. In a footnote to *Hare* cited by Plaintiff, the court held:

> We separate the two issues: the existence of a constitutional violation simpliciter and a municipality's liability for that violation. Different versions of the deliberate indifference test govern the two inquiries. Our opinion in this case makes clear that to prove an underlying constitutional violation in an individual or episodic acts case, a pre-trial detainee must establish that an official acted with *subjective* deliberate indifference. Once the detainee has met this burden, she has proved a violation of her rights under the Due Process Clause. To succeed in holding a municipality accountable for that due process violation, however, the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights.

74 F.3d at 649 n.4 (citation and parenthetical omitted) (original emphasis). In *Shepherd*, the court did not address the *Monell* standard, but held that Plaintiff's claim survived summary judgment upon a showing that the *Bell* standard had been met. 2008 WL 656889, *7. In reaching this conclusion in *Shepherd*, the court noted:

> Dallas County advances the mistaken premise that Shepherd must produce evidence that there was an intent not to provide for adequate

> distribution of medications. This is incorrect because, as the court has explained, if Shepherd adduces evidence of a condition of confinement that is not reasonably related to a legitimate government objective, Dallas County's intent to subject him to that condition is presumed.

*Id.* at *7 n.6 (citing *Palo ex rel. Estate of Palo v. Dallas County*, 2007 WL 2140590, *2-3 (N.D. Tex. July 26, 2007)). In *Palo*, the court also held that the *Bell* standard applied to a condition of confinement claim brought by a pretrial detainee and cited *Grabowski v. Jackson County Pub. Defenders Office*, 47 F.3d 1386, 1398 (5th Cir. 1995) ("*Grabowski I*"). In that case, the court held:

> [I]n all conditions of confinement actions, medically related or otherwise, it is not necessary for a pretrial detainee to establish that the official acted with "deliberate indifference" in order to establish a due process violation. The test is whether the official action was reasonably related to a legitimate government purpose or whether it was done for the purpose of punishment or retaliation.

*Id.* *Grabowski I* involved an appeal of the denial of a habeas petition brought pursuant to 28 U.S.C. § 2254 and the denial of petitioner's section 1983 complaint that challenged various aspects of his confinement as a pretrial detainee. The court vacated and remanded part of the section 1983 claim, instructing the district court to "determine whether the placement of Grabowski in the particular cell was reasonably related to legitimate institutional objectives, or whether it was arbitrary or purposeless." *Id.* at 1398. The court in *Shepherd*, relying on *Palo*, and in turn, looking to *Grabowski I*, did not note that *Grabowski I* was vacated and reheard en banc. In the en banc decision, the court did not address the correct legal standard to determine whether a constitutional violation had occurred, but held:

> The familiar doctrine of *respondeat superior* has no application in a section 1983 action against a governmental unit based on the wrongful acts of its employees. A municipality or county can be held accountable to a pretrial detainee for a due process violation resulting from an employee's acts **only if** the harmful acts resulted from a

**Memorandum Opinion and Order - Page 10**

> policy or custom "adopted or maintained with objective deliberate indifference to the detainee's constitutional rights."

*Grabowski v. Jackson County Public Def. Office*, 79 F.3d 478, 479 (5th Cir. 1996) (emphasis added) (citation and footnotes omitted) ("*Grabowski II*"). This reasoning is consistent with the footnote in *Hare* that states, in the context of an episodic act or omission claim, that a plaintiff must establish (1) a constitutional violation *and* (2) municipal liability. 74 F.3d 649 n.4. In light of *Grabowski II*, the court determines that Plaintiff's argument that the *Monell* showing does not apply to his claim is without merit.

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 594. A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Grabowski II*, 79 F.3d at 479; *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *see also Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct was "the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County*, 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action ordered . . . . The official must also be responsible for establishing final governmental policy respecting such activity before the [county] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency, or board. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional

choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390).

The type and quantum of proof a plaintiff must offer to establish deliberate indifference vary, however, with the type of inaction alleged and with the identity of the wrongdoer. When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *See, e.g.*, *Pembaur*, 475 U.S. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). When the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, *cert. dism'd*, 526 U.S. 1083 (1999) (internal quotations and citations omitted). Isolated violations are not persistent, often repeated constant violations that constitute custom or policy. *Bennett*, 728 F.2d at 768 n.3. In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Id*. at 768.

2. **Analysis**

Defendant argues that there is no evidence to establish or to raise a genuine issue of material fact that the County took any steps to act with deliberate indifference with respect to Plaintiff's confinement with other infected individuals. It also contends that there is no evidence that Sheriff

Bowles had knowledge that the policies and practices in place in December 2003 were constitutionally deficient or that if such a policy or practice exists, that it was the moving force behind Plaintiff's constitutional violation. Plaintiff's only response is that this showing is not required in this case, an argument that the court has rejected.

This is a close call because neither party adequately briefed this issue, and in this regard, the court will follow up with questions to both sides prior to trial. While Defendant moved on this ground and argues that there is no evidence that the Sheriff had any knowledge of a policy or practice that was the moving force behind Plaintiff's alleged constitutional violation, it also fails to address the evidence Plaintiff has offered that demonstrates that McMillan, Chief Deputy, Office of Inmate Housing, testified that he knew that there were high rates of MRSA in the Jail. Defendant's own evidence shows that McMillan knew in May of 2003 that there was a "serious and persistent outbreak" of MRSA in the Jail. A year earlier, on July 9, 2002, Assistant Chief Deputy David Mitchell sent a memorandum to the Sheriff and Executive Staff explaining that MRSA was beginning to be seen among inmates in the Jail. The HMA and Department of Justice reports also demonstrate that after this time, the MRSA problem in the Jail only got worse and that the Jail lacked adequate infection control practices. Defendant makes argument and has submitted additional evidence with its reply, but as noted above, the court will not address evidence to which Plaintiff has not had an opportunity to respond.

The deliberate indifference standard is certainly high, but the court determines that there is a genuine issue of material fact with respect to whether the County had a custom of ineffective infection control that was the moving cause behind Plaintiff's alleged constitutional violation and

that Defendant is not entitled to judgment as a matter of law. Accordingly, the court **denies** Defendant's motion for summary judgment.

IV. **Defendant's Objections to Plaintiff's Summary Judgment Evidence**

Defendant also has filed objections to the following: expert affidavits of Lutz and Thomas; the Health Management Associates Report; the United States Department of Justice letter; and depositions from other litigation.

The court the court **overrules** Defendant's objections to Plaintiff's expert reports. The court finds these reports relevant, and notes that Defendants never moved to strike either expert based on their qualifications. Moreover, even if the court were to strike these expert reports, it would not change its ruling on Defendant's Motion for Summary Judgment.

The court **overrules** Defendant's objections to the Health Management Associates Report and the United States Department of Justice letter. Although these documents were both produced after Plaintiff was a pretrial detainee in the Jail, because no inquiry into Jail officials' state of mind is required, they are probative of Jail conditions and Defendant's response to the high rate of MRSA infection in the Jail.

Finally, the court **overrules as moot** Defendant's objections to the deposition testimony of Steven Bowers, M.D. from the Mims litigation and James Ledford from the Anderson litigation because the court did not consider this evidence in ruling on the motion for summary judgment.

V. **Conclusion**

For the reasons stated herein, the court concludes that there is a genuine issue of material fact with respect to Plaintiff's section 1983 conditions of confinement claim. Accordingly, the court **denies** Defendant's Motion for Summary Judgment. The court also **denies as moot** the Joint Motion

to Stay Deadline for Filing Pretrial Materials, as it has determined that a trial of this matter is necessary.

**It is so ordered** this 10th day of October, 2008.

Sam A. Lindsay
United States District Judge